USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/18/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CELESTE WENEGIEME, CELESTINE WENEGIEME, ROBERT MARESCA, and TINA MARESCA,

Plaintiffs,

v.

JUDGE JAMES L. GARRITY, JR., UNITED STATES BANKRUPTCY COURT (SOUTHERN DISTRICT), JUDGE ROBERT E. GROSSMAN, UNITED STATES BANKRUPTCY COURT (EASTERN DISTRICT), INTERBAY FUNDING LLC, BAYVIEW LOAN SEVICING, GOLDSTEIN GROUP HOLDING, and MICHAEL GOLDSTEIN,

Defendants.

17-CV-9714 (RA)

MEMORANDUM OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiffs Celeste Wenegieme, Celestine Wenegieme, Robert Maresca, and Tina Maresca bring this suit seeking relief for the loss of the Wenegiemes' property at 215 West 134th Street, New York City, NY 10030 (the "Property").[1] According to Plaintiffs, Defendants negligently, fraudulently, and/or unconstitutionally took part in bankruptcy and foreclosure proceedings that ultimately deprived the Wenegiemes of that Property. Defendants moved to dismiss the

---

[1] It is unclear how the Marescas are related, if at all, to the Wenegiemes. Plaintiffs allege that the Property was co-owned by Celeste and Celestine Wenegieme, who appear to be siblings, but they nowhere claim that the Marescas had any interest in the Property. *See* Compl. (Dkt. 1) at 7. The Complaint, however, appears to allege that all Plaintiffs suffered some emotional harm from losing the Property. *See* Compl. at 8 (claiming that Plaintiffs "suffered extreme emotional trauma, stressors, pains," as well as "financial loss"). As far as the Court can discern, the Marescas' only involvement in this case was that they attended the hearing before Judge Grossman in the U.S. Bankruptcy Court for the Eastern District of New York, apparently on Celestine Wenegieme's behalf. *See* Compl. at 7; Ps' Aff. (Dkt. 47) at 3. The Court need not address whether the Marescas have standing in this case, however, because it dismisses their claims for other reasons as explained below.

Complaint. For the reasons that follow, Plaintiffs' federal claims are dismissed with prejudice and the Court declines jurisdiction over their remaining state-law claims.

## BACKGROUND

These facts are drawn from matters of which the Court can take judicial notice, Plaintiffs' Complaint and its attachments ("Compl.") at Dkt. 1, and Plaintiffs' various affidavits in opposition to Defendants' motions to dismiss ("Ps' Aff.")—Dkts. 30, 33, 39, 40, 45, and 47—to the extent those affidavits are consistent with the Complaint. *See Lamberti v. Motorola Sols., Inc.*, No. 12-CV-2472 (PGG), 2013 WL 166367, at *3 (S.D.N.Y. Jan. 16, 2013) (noting that allegations made in *pro se* opposition papers, when consistent with the complaint, may be considered on a motion to dismiss).[2]

Celeste and Celestine Wenegieme, along with non-party Alleyne Sylvester, appear to have all co-owned the Property. *See* Compl. (Dkt. 1) at 7; Ps' Aff. (Dkt. 30) at 2. Their interest, however, was subject to a mortgage note held initially by Interbay Funding LLC. *See* Compl. at 7, 11; Ps' Aff. (Dkt. 30) at 4; Ps' Aff. (Dkt. 45) at 2. Interbay later transferred or assigned its note to Bayview Loan Servicing, albeit in a manner that Plaintiffs have asserted was defective and unlawful. *See* Ps' Aff. (Dkt. 30) at 5, 8–9; Ps' Aff. (Dkt. 45) at 2. In 2011, Bayview initiated a foreclosure action, asserting that Plaintiffs had failed to pay the monthly mortgage. *See* Ps' Aff. (Dkt. 30) at 2. Plaintiffs disputed the foreclosure action. At some point, "Bay and Interbay hurriedly sold or transferred the [mortgage] note" to Michael Goldstein and Goldstein Group Holding without Plaintiffs' knowledge. *See* Ps' Aff. (Dkt. 30) at 2 (emphasis omitted). Plaintiffs argue that this transfer was also defective and unverified. *See* Compl. at 7; Ps' Aff.

---

[2] All page numbers in record citations refer to the page number generated by ECF upon filing as such page numbers are marked at the top of each document.

(Dkt. 30) at 2. Ultimately, the state court permitted the foreclosure to proceed. In a different lawsuit, Celeste Wenegieme and Alleyne Sylvester attempted to challenge that decision and its consequences by suing Interbay and Bayview in federal court.[3]

In 2016, the Wenegiemes filed for bankruptcy in the Southern and Eastern Districts of New York, triggering an automatic stay of the foreclosure proceedings against the Property. Goldstein Group Holding successfully moved in both Bankruptcy Courts to terminate the automatic stay so that it could foreclose upon the Property. *See* Compl. at 38, 43. In doing so, however, Goldstein Group Holding presented the Bankruptcy Courts with what Plaintiffs describe as "questionable documentation" of its rights to the Property. *See* Compl. at 7. Judges James L. Garrity, Jr., and Robert E. Grossman presided over the hearings and granted Goldstein Group Holding's motions in the Southern and Eastern Districts, respectively. *See* Compl. at 7, 38–39, 43–44. Michael Goldstein ultimately sold the Property. *See* Compl. at 7. Plaintiffs appealed both Bankruptcy decisions, and their appeals were dismissed.[4]

---

[3] Plaintiffs ultimately lost that case, which asserted both federal claims under Dodd-Frank and state-law tort claims. *See Sylvester v. Bayview Loan Servicing LLC*, No. 15-CV-1736 (JPO), 2016 WL 3566234, at *5 (S.D.N.Y. June 24, 2016) (granting in part a motion to dismiss); *Sylvester v. Interbay Funding LLC*, No. 15-CV-1736 (JPO), 2017 WL 4382056, at *6, 8 (S.D.N.Y. Sept. 29, 2017) (granting summary judgment to Interbay and Bayview, and noting that Plaintiffs' claims of falsified foreclosure "amount[ed] to nothing more than 'conclusory allegations' and 'unsubstantiated speculation'"). Because the Court concludes that it should decline jurisdiction over Plaintiffs' state-law claims in this case, it need not address Interbay's, Bayview's, and Goldstein's arguments that *res judicata* and collateral estoppel preclude Plaintiffs' claims here.

[4] *See In re: Wenegieme*, No. 16-CV-8107 (VSB), 2017 WL 4286324, at *4–5 (S.D.N.Y. Sept. 26, 2017) (dismissing appeal as untimely and moot); *Wenegieme v. Goldstein Grp. Holding*, No. 16-CV-5368 (JFB), 2017 WL 1422629, at *1 (E.D.N.Y. Apr. 21, 2017) (dismissing appeal as moot); *see also Wenegieme v. Macco*, 580 B.R. 17, 23 (E.D.N.Y. 2018) (affirming Bankruptcy Court's ultimate dismissal of the bankruptcy proceeding). To the extent that Plaintiffs contend their Complaint should be construed as an attempt to file bankruptcy appeals or an attempt to challenge the state foreclosure action, such arguments fail. Plaintiffs already appealed the bankruptcy decisions and lost. And the *Rooker-Feldman* doctrine bars any challenge to the underlying foreclosure decision, as Judge Oetken has explained to Celeste Wenegieme with respect to the very property at issue here. *See Sylvester*, 2016 WL 3566234, at *5.

On December 11, 2017, Plaintiffs filed this action, claiming that Judges Garrity and Grossman (the "Judges"), the U.S. Bankruptcy Courts for the Eastern and Southern Districts of New York (the "Bankruptcy Courts"), Interbay and Bayview, and Michael Goldstein and Goldstein Group Holding (collectively, "Goldstein") negligently, fraudulently, and/or unconstitutionally deprived them of the Property. In the Complaint, Plaintiffs explain that "[t]he premise of this lawsuit is based on 'Negligence.'" *See* Compl. at 7. Specifically, Plaintiffs assert that the Judges and Bankruptcy Courts were negligent by allegedly "ignor[ing] the law" and failing to "comparably inspect" the documents that Goldstein submitted with respect to the Property "in accordance to the law in New York State" and, Plaintiffs claim, in violation of their constitutional rights to due process of law. *See* Compl. at 7. Plaintiffs further assert that Goldstein was "negligent because he presented to both" Bankruptcy Courts the "questionable documentation" rather than the originals from Interbay and Bayview. *See* Compl. at 7.

Each set of Defendants—the Judges and Bankruptcy Court; Interbay and Bayview; and Goldstein—separately filed a motion to dismiss under Federal Rule of Civil Procedure 12(b). Interbay, Bayview, and Goldstein also requested injunctive relief from further lawsuits filed by Plaintiffs and/or sanctions against them. Plaintiffs filed affidavits in opposition to these motions, some of which asserted additional facts to supplement their original Complaint. Of those additional facts, Plaintiffs clarified that the reason Interbay and Bayview were included in the Complaint was that "these entities claimed to be the actual owners of the mortgage and note before the assignment was sold" to Goldstein, and so they purportedly acted "in concert" with Goldstein in presenting the "[f]aulty" documentation to the Bankruptcy Court. *See* Ps' Aff. (Dkt. 30) at 3.[5] The Defendants replied, and the Court permitted Plaintiffs to file sur-replies.

---

[5] Plaintiffs also described four new "defendants" in their affidavit in response to Interbay's and Bayview's motion: two individuals, Robert G. Hall and Notary Rogelio A. Portal, whose signatures or notarizations

4

## DISCUSSION

### I. Federal Claims

To the extent that Plaintiffs raise questions of federal constitutional law, this Court has "federal question" jurisdiction under 28 U.S.C. § 1331, at least if one puts aside the judicial and sovereign immunity concerns addressed below. Plaintiffs' federal constitutional claims are directed at the Judges and Bankruptcy Courts. According to Plaintiffs, those Defendants violated their due process and equal protection rights by granting Goldstein's motions to terminate the automatic stay of foreclosure proceedings based on purportedly falsified documents. *See* Ps' Aff. (Dkt. 40) at 4 (mentioning both due process and equal protection). Specifically, Plaintiffs assert that the Judges and Bankruptcy Courts were either negligent or deliberate in failing to follow Bankruptcy Court rules and laws, as well as failing to inspect the purportedly defective documents submitted by Goldstein. *See* Compl. at 7; Ps' Aff. (Dkt. 33) at 5–9; Ps' Aff. (Dkt. 39) at 4 (asserting for the first time that "Judge Garrity and Judge Grossman *deliberately* 'violated' the plaintiffs' civil rights under due process of the law" (emphasis added)); *see also* Ps' Aff. (Dkt. 40) at 3, 4. Although Plaintiffs frequently cite to the Fourteenth Amendment as the constitutional basis for their claims, this Court liberally construes their arguments as referring to the Fifth Amendment, which applies to federal actors. *See generally Darnell v. Pineiro*, 849 F.3d 17, 21 n.3 (2d Cir. 2017).

---

were purportedly forged or fraudulent, *see* Ps' Aff. (Dkt. 30) at 7, 9–10; and two entities, "MERS" and Bank of New York, which purportedly participated in the transfer of a mortgage note that Plaintiffs say violated state law, *see* Ps' Aff. (Dkt. 30) at 11–12. It is unclear whether Plaintiffs referred to these parties with the intent to amend the Complaint. Regardless, any such claims would be based on state law and are therefore subject to this Court's decision as set forth below declining jurisdiction over them. The Court accordingly need not address the status of Hall, Portal, MERS, or Bank of New York as parties, nor need it address the merits of any potential claims against them.

The Judges and Bankruptcy Courts move to dismiss under Rule 12(b)(6) and Rule 12(b)(1). In assessing these motions, this Court must construe Plaintiffs' *pro se* submissions liberally and interpret them "to raise the strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis original). But even *pro se* litigants must still "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (citations omitted). They also must assert a basis for, and ultimately prove, that this Court has subject matter jurisdiction. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). When considering a motion made pursuant to Rule 12(b)(1) or 12(b)(6), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). When a court "lacks the statutory or constitutional power to adjudicate" a case, dismissal is proper. *See Aurecchione*, 426 F.3d at 638.

There are several alternative bases for granting the Judges' and Bankruptcy Courts' motion to dismiss, depending on how this Court construes Plaintiffs' Complaint. Ultimately, however, no matter how the Complaint and Plaintiffs' various affidavits are construed, Plaintiffs' federal claims against the Judges and Bankruptcy Courts must be dismissed.[6]

If Plaintiffs' claims are construed as seeking monetary damages from the Judges in any capacity, their claims must be dismissed under the doctrine of judicial immunity. This doctrine protects judges from claims for damages "arising out of their judicial acts." *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997). Even when judicial immunity creates some unfairness in a

---

[6] To the extent that Plaintiffs assert any constitutional claims against other Defendants, those claims fail as a matter of law because Interbay, Bayview, and Goldstein are not federal or state government actors. *See generally Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) ("[T]he United States Constitution regulates only the Government, not private parties.").

particular case, it serves the interests of justice by empowering judicial officers to exercise the authority vested in them while being "free to act upon [their] own convictions, without apprehension of personal consequences." *See Stump v. Sparkman*, 435 U.S. 349, 363–64 (1978) (citation omitted). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* at 356–57 (citation omitted). "There is a difference between *exceeding* jurisdiction and acting in the *absence* of jurisdiction." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (emphasis original). For example,

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*See Stump*, 435 U.S. at 357 n.7. "[T]he scope of the judge's jurisdiction must be construed broadly when the issue is the immunity of the judge." *Tucker*, 118 F.3d at 932 (internal marks and citation omitted). To receive immunity, a judge must also be acting in his or her "judicial capacity" performing a "judicial act." *See Stump*, 435 U.S. at 362. An act is judicial when it is "normally performed by a judge" and is performed in a context where the parties "dealt with the judge in his judicial capacity." *Id.* Furthermore, as most relevant here, "[j]udicial immunity extends to judges of the United States Bankruptcy Court." *See Tucker v. Abram*, No. 92 CIV. 7724 (PKL), 1993 WL 60605, at *1 (S.D.N.Y. Mar. 1, 1993). Moreover, and contrary to Plaintiffs' assertion, *see* Ps' Aff. (Dkt. 33) at 5, judicial immunity applies with equal force when a judge is alleged to have violated someone's civil rights, *see Stump*, 435 U.S. at 356.

There is no doubt here (1) that the Judges were acting in their judicial capacities when they granted Goldstein's motions to lift the bankruptcy stay pursuant to 11 U.S.C. § 362(d)(1); (2) that

7

granting those motions was a judicial act; and (3) that the Judges were not acting "in the clear absence of all jurisdiction," *Stump*, 435 U.S. at 356–57. The Judges were acting as bankruptcy judges presiding over bankruptcy cases ruling on typical bankruptcy motions. Their jurisdiction plainly arose from 28 U.S.C. § 157—which permits district courts to refer title 11 bankruptcy cases, including Chapter 13 bankruptcy actions, to bankruptcy judges—and the associated standing orders of the Southern and Eastern Districts of New York.[7] Even accepting Plaintiffs' assertions that the Judges negligently or deliberately accepted fraudulent documents in lifting the stay and that they committed procedural or substantive errors of law in doing so, such "errors" did not deprive the Judges of subject matter jurisdiction or strip them of judicial immunity. *See Tucker*, 118 F.3d at 936. That conclusion holds even if the errors were committed maliciously, corruptly, or in excess of the judges' authority. *See id.* at 936; *see also Bradley v. Fisher*, 80 U.S. 335, 351 (1871) (establishing that judges are "not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly"). Moreover, "[d]isagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity." *Stump*, 435 U.S. at 363. Thus, Plaintiffs' claims for damages against the Judges must be dismissed under the doctrine of judicial immunity.[8]

To the extent that Plaintiffs sue the Judges and the Bankruptcy Courts in their official capacities, those Defendants are also protected by sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued." *Dotson v. Griesa*, 398 F.3d 156,

---

[7] *See Amended Standing Order of Reference Re: Title 11*, No. 12-MC-32 (LAP) (S.D.N.Y. February 1, 2012), *available at* www.nysd.uscourts.gov/rules/StandingOrder_OrderReference_12mc32.pdf; *In the Matter of the Referral of Matters to the Bankruptcy Judges*, (E.D.N.Y. Dec. 5, 2012), *available at* https://www.nyed.uscourts.gov/sites/default/files/general-ordes/Order12052012.pdf.

[8] Plaintiffs fail to allege any basis for asserting claims against the Bankruptcy Courts as separate from the Judges. The Bankruptcy Courts are thus protected by judicial and, as explained below, sovereign immunity. *See Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 885 (2d Cir. 1990).

177 (2d Cir. 2005) (citation omitted). That immunity limits this Court's jurisdiction and extends "not only [to] the United States but also [to] its agencies and officers when the latter act in their official capacities." *See id.* For the reasons explained above, the challenged conduct of the Judges all occurred in their official capacities. Although Plaintiffs correctly point out that, under certain circumstances, Congress has waived sovereign immunity under the Federal Tort Claims Act, that waiver does not extend to constitutional tort claims. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 672 & n.1 (2d Cir. 2013).[9]

Plaintiffs alternatively appear to argue that they can state a claim for injunctive or declaratory relief. *See* Ps' Aff. (Dkt. 40) at 14, 16–17. In support of this argument, they cite *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny, which permit certain kinds of lawsuits against state actors in their official capacities for injunctive relief. The *Ex Parte Young* doctrine, however, applies to the immunity of state actors under the Eleventh Amendment, not to federal actors like the Judges and Bankruptcy Courts here. *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007). Construing Plaintiffs' claims liberally, they may also be attempting to seek injunctive relief under this Court's general equitable powers to grant an injunction to prevent violations of constitutional rights. *See Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the ability of "federal courts to issue injunctions to protect rights safeguarded by the Constitution"). "[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). Even so, individuals have standing to pursue prospective equitable and declaratory relief only when they can plausibly allege "a real and immediate threat" that they will be subject to unconstitutional conduct in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 105 (1983). Otherwise, a plaintiff's

---

[9] The Court need not address whether Plaintiffs assert non-constitutional tort claims against the Judges and Bankruptcy Courts because such damages claims are barred by judicial immunity, as discussed above.

equitable claims do not present an "actual controversy" for constitutional purposes. *See id.* at 104. Here, Plaintiffs make no allegations even suggesting that they have standing to pursue prospective equitable relief; they seek only damages for what they have already and long ago lost. They cannot recover those damages from the Judges or Bankruptcy Courts, on a constitutional theory or otherwise.[10] For these reasons, Plaintiffs' federal claims, and all claims against the Judges and Bankruptcy Courts, must be dismissed.

## II. State-Law Claims

This conclusion leaves Plaintiffs' non-constitutional claims, which Plaintiffs appear to base on state or local statutes, regulations, and common-law theories of negligence or fraud. This Court as an independent obligation to assess its jurisdiction over these claims. *See generally SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 347 (2d Cir. 2018).

The Court does not have diversity jurisdiction over this case or over Plaintiffs' state-law claims under 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity, which in turn requires that "all plaintiffs must be citizens of states diverse from those of all defendants." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir.), *as amended* (Nov. 12, 2014). "[C]omplete diversity of all parties is an absolute, bright-line prerequisite to federal subject matter jurisdiction" under 28 U.S.C. § 1332. *Id.* at 119. Based on the allegations in the Complaint, complete diversity of citizenship does not exist here. As Plaintiffs allege in their Complaint, they are all New York citizens, as are several Defendants. *See* Compl. at 2–6. For example, the Complaint and the Complaint's attachments specifically provide

---

[10] Plaintiffs also argue that the First Amendment's right to petition the government with grievances requires this Court to permit this case to go forward. *See* Ps' Aff. (Dkt. 40) at 9–10. Although "filing a complaint in court is a form of petitioning activity," the Supreme Court has explained that "baseless litigation is not immunized by the First Amendment right to petition." *See McDonald v. Smith*, 472 U.S. 479, 484 (1985). The right to petition thus does not protect Plaintiffs' otherwise barred claims here.

that the business address of both Michael Goldstein and Goldstein Group Holding is 41 Mariner Way, Monsey, New York 10952. *See* Compl. at 3, 24, 54. A corporation is a citizen of any state where it has its principle place of business, *i.e.*, any state from which its executives "direct, control, and coordinate the corporation's activities." *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Since Michael Goldstein is the president of Goldstein Group Holding, *see* Compl. at 25, and both he and Goldstein Group Holding are alleged to be based at the same address in New York, the Court concludes that Goldstein Group Holding is a citizen of New York.[11]

Thus, the only apparent basis for considering Plaintiffs' non-federal claims is supplemental jurisdiction under 28 U.S.C. § 1367, to the extent that those non-federal claims form part of "the same case or controversy" as Plaintiffs' federal claims. Although Defendants' arguments with respect to *res judicata* in this case appear quite strong, given the early stage of this case and the dismissal of Plaintiffs' federal claims, this Court will follow Circuit guidance to "decline the exercise of jurisdiction by dismissing the [remainder of the] case without prejudice" to pursuing the state-law claims in a state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted).

### III. Leave to Amend and Jurisdictional Submission

While leave to amend is ordinarily freely given, the Court sees no basis for granting additional leave in this case. Plaintiffs have failed to assert any plausible basis for permitting

---

[11] In doing so, the Court takes judicial notice of the fact that Goldstein Group Holding has held itself out to be a corporation in the past in this District. In the previous litigation between Celeste Wenegieme and Goldstein, Goldstein Group Holding appeared on ECF as the "ADR Provider" "Goldstein Group Holding, *Inc.*," (emphasis added) and was referred to as such by Judge Oetken in his decision. *See Sylvester*, No. 15-CV-1736, 2017 WL 4382056, at *1; *see also* Fed. R. Ev. 201; *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice."). The Court has no reason to question the accuracy of Goldstein Group Holding's status as a corporation. Indeed, counsel for Goldstein Group Holding in this case included the pertinent "Inc." in at least one of her signature blocks in filings in this case. *See* Dkt. 27.

their federal claims to proceed. The Court also sees no basis to grant Plaintiffs leave to amend with respect to the merits of their non-federal claims. This is so despite the Court's consideration of all six of Plaintiffs' responses (three oppositions and three sur-replies) to Defendants' motions to dismiss.

The Court is also inclined to deny leave to amend with respect to diversity jurisdiction because the lack of diversity is apparent from the face of the Complaint. Plaintiffs' other cases in this District have at least twice been dismissed for failing to properly assert diversity jurisdiction, putting them on notice of the necessity of properly alleging diversity. *See, e.g., Wenegieme v. U.S. Bank Nat. Association*, No. 14-CV-6448 (JPO) (S.D.N.Y. Aug. 14, 2014) (Dkt. 4); *Wenegieme v. Nadel*, No. 17-CV-6622 (LGS) (S.D.N.Y. Sept. 15, 2017) (Dkt. 6). In an abundance of caution, however, the Court will permit Plaintiffs to file—to the extent they have a good-faith basis for doing so—a supplemental jurisdictional submission on the issue of diversity jurisdiction alone. *See Wright v. Musanti*, 887 F.3d 577, 585 (2d Cir. 2018). The Court will consider any proof they submit, so long as it is filed no later than **October 18, 2018**.[12] Defendants may file a response if they do so within one week of Plaintiffs' submission being filed. **No extensions of time will be granted to any party, and there will be no reply by Plaintiffs to any Defendant's response.** If Plaintiffs fail to submit a supplemental submission by October 18, the Court will enter judgment

---

[12] To establish complete diversity, Plaintiffs must prove that every individual defendant is domiciled in a state diverse from theirs—*i.e.*, that the individual's "true fixed home and principal establishment, . . . to which, whenever he is absent, he has the intention of returning" is not in New York. *See Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). Plaintiffs must also prove that each Defendant entity is not a citizen of New York. To do so, they must first establish whether the entity is incorporated or not. For unincorporated entities, Plaintiffs must prove that none of the entity's members (*e.g.*, owners or shareholders) are citizens of New York. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1014 (2016). For corporations, Plaintiffs must prove that neither the place of incorporation nor the principle place of business is in New York. *See id.* at 1015. If Plaintiffs actually seek to add the new defendants mentioned in footnote 5 of this Memorandum Opinion to their Complaint, they must prove that those individuals and entities are completely diverse from Plaintiffs.

for Defendants and close the case. If Plaintiffs do file a supplemental submission, the Court will take it and any response by Defendants under consideration.

## CONCLUSION

For the foregoing reasons, Plaintiffs' federal claims are dismissed with prejudice and the Court declines jurisdiction over their remaining non-federal claims. To the extent that Interbay's, Bayview's, and Goldstein's requests for an injunction and sanctions against Plaintiffs survive this dismissal, they are denied in an exercise of this Court's discretion given that it does not appear that Plaintiffs have been formally warned in the past with respect to their litigation tactics. Plaintiffs are now on notice, however, that additional lawsuits—particularly those filed in federal court, presenting issues on which the federal courts have already ruled or asserting claims over which the federal courts lack subject matter jurisdiction—may well result in Plaintiffs being sanctioned or an injunction being entered against them.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 4, 17, and 24. The case shall remain open and entry of judgment shall be stayed pending a determination on any supplemental jurisdictional submission by Plaintiffs as set forth in this Memorandum Opinion.

SO ORDERED.

Dated: September 18, 2018
New York, New York

Ronnie Abrams
United States District Judge